**FILED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

OCT 30 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| USPS Priority Mail Express Parcel EE352122630US, ) | Case No. |
| addressed to "Max Brown, 3230 Arena Blvd, Ste 245, ) | **2: 1 8 - SW - 8 8 6  DB** |
| Sacramento, CA 95834" ) | |
| ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. Section 841(a)(1); | Distribution and possession with intent to distribute a controlled substance; |
| 21 U.S.C. Section 843(b); | Illegal use of the mails in furtherance of narcotic trafficking; and |
| 21 U.S.C. Section 846 | Attempt and conspiracy to commit the foregoing offenses |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jessica Burger, Postal Inspector, USPIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **10-1-18**

_____
*Judge's signature*

City and state:  Sacramento, California

Deborah Barnes, U.S. Magistrate Judge

## Affidavit of Postal Inspector Jessica R. Burger

I, Jessica R. Burger, being duly sworn, hereby depose and state:

### Purpose

1.   This Affidavit is made in support of a search warrant for the following USPS Priority Mail Express Parcel:

   a.   USPS Priority Mail Express Parcel EE352122630US, addressed to "Max Brown, 3230 Arena Blvd, Ste 245, Sacramento, CA 95834" ("**THE PARCEL**").

2.   **THE PARCEL** is in the temporary custody of the United States Postal Inspection Service ("USPIS") and is described more particularly in Attachment A, which is attached hereto and fully incorporated herein.

3.   Based on the information provided in this affidavit, I believe there is probable cause to believe that **THE PARCEL** contains evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. § 841(a) (1) (distribution, and possession with intent to distribute, a controlled substance), 21 U.S.C. § 843(b) (illegal use of the mails in furtherance of narcotic trafficking), and 21 U.S.C. § 846 (attempt and conspiracy to commit the foregoing offenses). The evidence, fruits, and instrumentalities to be searched for and seized are more fully described in Attachment B, which is attached hereto and incorporated fully herein.

### Agent Background

4.   I have been a Postal Inspector since January 2013. I am currently assigned to the Sacramento Domicile, San Francisco Division, of the United States Postal Inspection Service. My current assignment is to investigate the unlawful transportation of contraband, including controlled substances and proceeds of the sale of controlled substances, through the United States Mail.

5.   I attended the United States Postal Inspection Service Basic Inspector Training in Potomac, Maryland. I also completed a forty hour Prohibited Mailings Narcotics training with the United States Postal Inspection Service. Through my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug-related proceeds; and to communicate with other , participants to accomplish such objectives. I have received specialized training in narcotics investigation matters including, but not limited to, drug interdiction, drug detection, and money laundering techniques and schemes.

1

6.   I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, marijuana, methamphetamine, and other controlled substances.  During the course of these investigations, I have become familiar with the manner in which drug traffickers use the mail to conduct their illegal operations.  I have written search warrants related to parcel interdiction efforts.

7.   I am a "Federal law enforcement officer" within the meaning of Rule 41(a) (2) (C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

8.   The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### Statement of Probable Cause

### A.   Parcel Identification

9.   On October 17, 2018, members of the Sacramento, California U.S. Postal Inspection Service NECI Task Force conducted a review of USPS Priority Mail Express parcels. **THE PARCEL** was detained for further investigation. **THE PARCEL**, which originated in Los Angeles, CA, was destined for Sacramento, CA.  Law enforcement observed several anomalies that their training and experience have shown are characteristics of parcels containing controlled substances and/or proceeds of narcotics trafficking.  Specifically, **THE PARCEL** was sent via Express Mail with an associated tracking number.  Tracking numbers allow the sender, recipient, or anyone else with the tracking number to identify the parcel's location in the mail stream at any point from mailing to delivery.

10.   Additionally, **THE PARCEL** was observed to be heavily taped around the seams. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and narcotics proceeds through the US mail often tape the seams to prevent any smell emanating from parcels.

11.   USPS records confirmed the transaction for **THE PARCEL** was completed in cash. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and narcotics proceeds through the US Mail often pay in cash to remain anonymous to law enforcement.

12.     The return address on **THE PARCEL** was listed as being sent from "Abel Auto Parts, 3356 Sunset Blvd, LA, CA 90026." A search was conducted of the address using open source internet searches, as well as Thomson Reuters CLEAR, an online public and proprietary records database used by law enforcement and government agencies to verify names and addresses. That search did not return any results for the address listed. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and proceeds through the US Mail often provide fictitious and/or incomplete names and/or addresses as a way to remain anonymous to law enforcement.

13.     A search for the intended recipient address for **THE PARCEL**, "Max Brown, 3230 Arena Blvd, Ste 245, Sacramento, CA 95834," was also conducted using Thomson Reuters CLEAR. The search showed the address to be a good address and but the name Max Brown did not associate to the address. The address is UPS Store that has PO Boxes for rent to receive mail. There is no specific PO Box number listed on **THE PARCEL**.

**B.      Narcotic Detection Canine Sniff**

14.     On October 17, 2018, Task Force Officer ("TFO") Noah Brommeland used his narcotic-detection trained canine named "Dash" to sniff **THE PARCEL**. At the time, **THE PARCEL** was located at the USPS Processing and Distribution Center in West Sacramento, CA. Prior to conducting the sniff of **THE PARCEL**, the area where Dash was to conduct the test was proofed by TFO Brommeland. K9 Dash did not give a positive alert to the presence of an odor of narcotics in the area.

15.     **THE PARCEL** was then placed among other office equipment and parcels. At approximately 7:54 a.m., TFO Brommeland and Dash conducted a search of the area, and Dash positively alerted to the presence of a narcotic odor emanating from **THE PARCEL**.

16.     TFO Noah Brommeland has been a full-time sworn peace officer in the State of California since 1998 and is employed by the Placer County District Attorney's Office as a DA Investigator. From 1998 to 2005, TFO Brommeland served with the Santa Clara County Sheriff's Office as a Deputy and Sergeant. Currently, TFO Brommeland is assigned to the United States Postal Inspection Service, Narcotics and Economic Crime Investigations (NECI) Task Force at the Sacramento Domicile of the San Francisco Division. Task Force duties involve the investigation of the unlawful transportation of contraband, including controlled substances and drug proceeds, through the United States Mail.

17.    On November 28, 2014, TFO Brommeland was assigned Dash. Dash is a yellow
       Labrador Retriever selected from a specialty breeder in Texas. Dash was born on
       December 31, 2013. Dash is a "signal purpose" working canine, trained in the area of
       narcotic detection under the instruction of Retired Deputy Sheriff John Riboni of the
       Los Angeles County Sheriff's Department. Mr. Riboni has over thirty-five years of
       experience with Police K9s, is a Post K9 Certifier, and was formerly a judge with the
       Western States Police Canine Association. Dash and TFO Brommeland have over
       380 hours of specialized training from Mr. Riboni in the detection of marijuana,
       cocaine, heroin, and methamphetamine. Dash and TFO Brommeland were initially
       certified by Mr. Ron Goodpaster from the Roseville Police Department, on February
       18, 2015 as being proficient in the detection of narcotic substances in high, low, and
       buried locations. Dash and TFO Brommeland were last certified on June 26, 2018.
       Training is ongoing for Dash and TFO Brommeland. TFO Brommeland is a member
       of the California Narcotic Officer's Association (CNOA) and the Western States
       Police Canine Association (WSPCA). TFO Brommeland has attended courses,
       conferences, and practical hands-on K9 training with these organizations. TFO
       Brommeland is also a member of the International Narcotics Investigators
       Association and attended the annual conference in June 2016.

18.    Dash's alert consists of physical and mental reactions, which include heightened
       emotional state, pawing, or a deliberate sit at the area or object he smells the drug
       odor coming from. Dash has successfully completed training exercises where known
       controlled substances, containers, or paraphernalia were hidden, to include parcels,
       the interior and exterior of motor vehicles, and storage lockers. Dash also conducts
       regular proofing exercises to ensure that he does not alert to regular, non-narcotics-
       associated odors including food, plastic bags and wrap, tape, and other items.
       Proofing is a method used in training to ensure the canine alerts only to the odors for
       which it is trained to alert. Dash has also been proofed using circulated and non-
       circulated U.S. currency. Drug proceeds that have been recently subjected to, or
       stored with, one of the narcotic substances Dash is trained to detect will be grossly
       contaminated. This odor, in residual form (billionths of a gram), is present on
       everyday circulated currency but not in the amount Dash has been trained to detect.

19.    Dash has previously alerted on United States Mail parcels. Dash's alerts have
       cumulatively resulted in the seizure of over $7 million dollars in U.S. Currency (drug
       proceeds).

20.    Therefore, it is the opinion of TFO Brommeland that based on Dash's positive alert,
       **THE PARCEL** contains drugs, paraphernalia, or currency that has been recently

4

subjected or stored with one of the narcotic substances Dash is trained to detect and is thus grossly contaminated.

## C.    Additional Investigation

21.    On October 17, 2018, at approximately 9:30 a.m., law enforcement contacted Abel Auto Parts in Los Angeles, CA via telephone number (323) 261-1127.  This phone number was obtained by conducting a Google search of Abel Auto Parts located in Los Angeles, CA.  Law enforcement spoke to Hector Flores who works at Abel Auto Parts.  Flores stated the location of the business is 2231 Whittier Blvd, Los Angeles, CA 90023.  Flores stated the business has never been located off of Sunset Blvd, Los Angeles, CA.  Flores stated there are no other Abel Auto Parts stores located in the city of Los Angeles, CA.  Flores stated the business did not mail anything to Sacramento, CA on October 16, 2018, the date **THE PARCEL** was mailed.  Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and proceeds through the US Mail often provide fictitious and/or incomplete names and/or addresses as a way to remain anonymous to law enforcement.

22.    On October 17, 2018, law enforcement contacted the UPS Store located at 3230 Arena Blvd Ste 245, Sacramento, CA 95834 and spoke to Manager MJ Dheensa.  Dheensa stated she searched the PO Box applications and did not have an application for anyone by the name of Max Brown.   Dheensa did locate a PO Box application for someone by the name of James Brown.  Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and proceeds through the US Mail often provide fictitious and/or incomplete names and/or addresses as a way to remain anonymous to law enforcement.

## D.    Methods and Means of Using the United States Mail

23.    Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mail to ship controlled substances from one location to another.  Indicators for parcels that contain controlled substances and/or proceeds from controlled substances include, but are not limited to, the following:

  a.   It is common practice for shippers of the controlled substances to use Express Mail and Priority Mail because the drugs arrive at the destination more quickly and on a predictable date.  Express Mail and Priority Mail, when paired with a

special service such as delivery confirmation, allow traffickers to monitor the progress of the shipment of controlled substances. Traffickers pay for the benefit of being able to confirm the delivery of the parcel by checking the Postal Service Internet website and/or calling the local post office.

b. Packages containing controlled substances or proceeds have, in many instances, a fictitious return address, incomplete return address, no return address, a return address that is the same as the addressee address, or a return address that does not match the place from which the parcel was mailed. These packages are also sometimes addressed to or from a commercial mail receiving agency (*e.g.*, Mail Boxes Etc.). A shipper may also mail the parcel containing controlled substances from an area different from the return address on the parcel because: (1) the return address is fictitious or (2) the shipper is attempting to conceal the actual location from which the parcel was mailed. These practices are used by narcotics traffickers to hide from law enforcement officials the true identity of the persons shipping and/or receiving the controlled substances or proceeds.

c. Individuals involved in the trafficking of controlled substances through the United States Mail will send and receive Express or Priority mailings on a more frequent basis than a normal postal customer. Drug traffickers use Express Mail and Priority Mail at a higher rate due to their frequent exchanges of controlled substances and the proceeds from the sale of these controlled substances.

d. In order to conceal the distinctive smell of controlled substances from narcotics detection dogs, these packages tend to be wrapped excessively in bubble-pack and wrapping plastic, and are sometimes sealed with the use of tape around all seams. In addition, the parcels often contain other smaller parcels which are carefully sealed to prevent the escape of odors. Perfumes, coffee, dryer sheets, tobacco, or other substances with strong odors are also sometimes used to mask the odor of the controlled substances being shipped. Drug traffickers often use heat/vacuum sealed plastic bags, and/or re-sealed cans in an attempt to prevent the escape of orders.

e. California is typically a source state for drugs, especially marijuana. It is common for individuals in California to mail parcels containing narcotics to other states and then receive mail parcels containing cash payments in return.

24.    Based on my training and experience, I know that parcels shipped by drug traffickers sometimes contain information and documentation related to the sales and distribution of controlled substances. The documentation can include, but is not limited to, information and instructions on the breakdown and distribution of the controlled substances at the destination; information on the use and effects of the

various controlled substances; information about the actual sender; pay/owe sheets; and information and instructions for ordering future controlled substances.

25. Drug traffickers who use the United States Mail and other carriers as a means of distributing controlled substances, paraphernalia, and proceeds, and as a means of communicating with co-conspirators often include the following in parcels relating to their trafficking activity, all of which are evidence, fruits, proceeds, and/or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846:

   a. Controlled substances, including heroin, cocaine, methamphetamine, and marijuana.

   b. Packaging, baggies, and cutting agents, including items used to conceal the odor of narcotics, such as perfumes, coffee, dryer sheets, tobacco, or other substances with a strong odor.

   c. Records reflecting the mailing or receipt of packages through Express Mail, Priority Mail, Federal Express, UPS or any other common carrier.

   d. United States and foreign currency, securities, precious metals, jewelry, stocks, bonds, in amounts exceeding $500, including financial records related to the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales, trafficking, or distribution of controlled substances.

   e. Records reflecting or relating to the transporting, ordering, purchasing, and/or distribution of controlled substances, including but not limited to books, receipts, notes, ledgers, pay and owe sheets, correspondence, records noting price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed.

   f. Records reflecting or relating to co-conspirators, including but not limited to personal notes, correspondence, cables, telegrams, personal address lists, listings of telephone numbers, and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates and conspirators in controlled substance trafficking activities.

   g. Indicia or other forms of evidence showing dominion and control, or ownership of mail parcels, locations, vehicles, storage areas, safes, lock boxes, and/or containers related to the storage of controlled substances or proceeds.

## Conclusion

26.     Based on the facts set forth in this Affidavit, I believe there is probable cause that
        evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1),
        843(b), and 846 are concealed in **THE PARCEL**.  Accordingly, I respectfully request
        the issuance of a search warrant authorizing the search of **THE PARCEL** (as described
        in Attachment A), and the seizure of the items described in Attachment B.


I swear, under the penalty of perjury, that the foregoing information is true and correct to the
best of my knowledge, information, and belief.


_____
Jessica Burger
United States Postal Inspector


Sworn and Subscribed to me on October 17, 2018:


_____
Hon. Deborah Barnes
United States Magistrate Judge


Approved as to form:


_____
Cameron L. Desmond
Assistant U.S. Attorney


8

## ATTACHMENT A

### *Description of the Parcel to be Searched*

One Priority Mail Express Parcel bearing tracking number EE352122630US, measuring approximately 20" x 14" x 12" and weighing approximately 19 pounds 7 ounces. **THE PARCEL** is addressed to "Max Brown, 3230 Arena Blvd, Ste 245, Sacramento, CA 95834." The return address on **THE PARCEL** is "Abel Auto Parts, 3356 Sunset Blvd, LA, CA 90026." **THE PARCEL** bears a postage strip with meter number R2307M152590-11in the amount of $107.30 mailed from ZIP Code 90013 on October 16, 2018, located in the upper right hand corner. **THE PARCEL** is currently in my possession in the Eastern District of California.

ATTACHMENT B

### *List of Items to be Seized*

The following items constitute evidence, fruits, proceeds, and instrumentalities of violations of 21 U.S.C. §§ 841(a) (1), 843(b), and 846.

1.  Controlled substances of any kind, including but not limited to heroin, cocaine, methamphetamine, and/or marijuana.

2.  Packing, packaging, baggies, and cutting agents, including items used to conceal the odor of narcotics, such as perfumes, coffee, dryer sheets, tobacco, or other substances with a strong odor.

3.  Any and all records reflecting the sending or receiving of packages through Express Mail, Priority Mail, Federal Express, UPS, or any other common carrier.

4.  United States and foreign currency, securities, precious metals, jewelry, stocks, bonds, in amounts exceeding $500, including any and all financial records to facilitate the investigation of the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales, trafficking, or distribution of controlled substances.

5.  Records reflecting or relating to the transporting, ordering, purchasing, and/or distribution of controlled substances, including but not limited to books, receipts, notes, ledgers, pay and owe sheets, correspondence, records noting price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed.

6.  Records reflecting or relating to co-conspirators, including but not limited to personal notes, correspondence, cables, telegrams, personal address lists, listings of telephone numbers, and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates and conspirators in controlled substance trafficking activities.

7.  Indicia or other forms of evidence showing dominion and control, or ownership of mail parcels, locations, vehicles, storage areas, safes, lock boxes, and/or containers related to the storage of controlled substances or proceeds.